Good morning. My name is Thomas Chang and my co-counsel is Rachel Bankston. We are representing the petitioners in this case. I will be addressing the jurisdiction as to the one-year bar exceptions and voluntary departure, and my co-counsel, Mrs. Bankston, will be addressing asylum, withholding, and the protection of the Convention Against Torture Claims. Petitioners in this case have fled from Guatemala to the United States for their very safety, yet they have not received a full review of all the evidence submitted in the record. As to the first issue of the jurisdiction as to the one-year bar exception, there is no question that this court has jurisdiction because it is based on a due process violation which is grounded in the constitutional claim. Goodras v. INS has held that due process is only satisfied by a full and fair hearing of all the relevant evidence submitted in the record. Petitioners in this claim have advanced two specific legal claims, but the Board has only addressed one of them. The Board has completely and inexplicably failed to address the mental health exception which is specifically grounded in the agency's own regulation for an exception to a one-year bar. There is no statement in any part of the record. The issue was raised to the Board, was it not? The issue was raised to the Board. And the Board obviously looked very closely at this because it did indeed reverse the finding on the credibility. So are we to assume the Board simply disregarded it? I mean, it does appear the Board gave it a full and fair consideration, does it not? The issue in this case is that there isn't any consideration. There's no legal reasoning why they rejected or even addressed it. There's no specific general reference that they even touched upon the mental health exception, which is the due process violation in this case. And therefore, we ask that they are happy to Had they made a summary determination, would you say that they failed to address all of the issues? If there was at least some sort of summary argument or What's the summary? They just said we affirm, forgetting for a moment the issue of the credibility. We summarily affirm the ruling below the ALJ's ruling. Would that mean that the argument would be they didn't consider anything? I believe that there needs to be at least a reference of any kind that touches upon the evidence or any of the testimony to accurately address it. By completely ignoring it, it just seems like the Board is missing it. It wasn't clear what your authority was that they have to address. Where it is clear that the Board heard this, it was raised to the Board. The Board clearly did a searching examination and indeed changed some of the findings. That we are to assume that they failed to consider simply because it may not have been addressed, isn't it inherent in the ruling by the Board? I think the Ninth Circuit held in the Cicada v. Gonzales that if a whole entire argument is just completely ignored, then it constitutes a clear due process violation. I think it holds here that by not addressing the petitioner's claim or testimony in any regards, this Court must remand this case back down to the Board for full and fair consideration of all the relevant evidence and address this matter that was never specifically discussed. Second, on the issue that they did address, which is the untimely filing delay, the Board erred in two ways. One, it once again failed to address the mental health exception, which is material to the reasonless prong. And second, the Board's own decision is internally inconsistent in that it holds on one hand that petitioner sat on his rights and failed to file in a timely manner, then on the other hand credits the petitioner's testimony that he felt he reasonably filed his application, and when he found he was being duped by a bogus lawyer, he was actually surprised. You can't reconcile both of these arguments. So, therefore, this Court has to send this case back down to the Board for a remand. Finally, on the issue of voluntary departure, this Court has jurisdiction to hear this issue because the immigration judge ruled an eligibility based on a statutory ground rather than discretionary ground. Is there anything in this record that causes you concern? For voluntary departure. You talk about he was duped by a bogus lawyer. How much time passed between the time, the beginning and the end, from the time he knew until, from the time it happened until the time he knew or should have known, or could have known? Two years past, how Does that pose any problem with your argument so far as you're concerned? I don't believe so, because all the two years past, because the Board never addressed the mental health exception in his But, you see, you may be mistaken as to what the Board had to do, and that's why, when the judge was saying to you, did they mention it? I think you want a full and lengthy discussion. We want to know, were you aware of it? And when they mention it, that has to say to appellate court, they were aware of it. Now you want more discussion. But what legally says they must do more than they've done? I believe, you know, Segeta v. Gonzalez holds that if you just completely fail to address the entire argument, it's a due process violation. You need to at least explain or even reference that in some general statement that this was Do you have a case that says that? I believe it's in the record, but I don't have it on hand right now. A case that says that you can mention grounds, but that's not enough. You must fully discuss each ground mentioned or we're going to send it back. That's what I think you're arguing, isn't it? Yes. I believe it's Segeta. But isn't that contrary to cases that have held that for a due process violation, and that's the cloaking discussion, that it's not enough to simply say, okay, they didn't discuss it enough. That's not the due process violation. The question is, did you have a hearing on it? And what I'm having a problem with is understanding how you're saying they didn't get a hearing on it. It was raised. It was raised to the Board. Inherent in the Board's decision is rejection. And I don't know how much discussion does it have to have to, A, qualify as a due process violation, and then, B, to violate due process. Well, I believe it has to have at least any part of it, at least a little bit. It has to be addressed in any part of the record for there to be an adequate addressing of it. Thank you. Your Honors, I am here to speak on behalf of a husband traumatized by torture and his frightened wife, whose hearing was also riddled with errors. This Court is compelled by its own jurisprudence, as well as the factual record, to find that the husband in this case suffered past persecution. In Salazar-Parugar v. INS, decided by this Court, past persecution was found by a combination of threat to the applicant and beating of the parents. In this case, the applicant suffered physical harm through forced recruitment, several beatings, and a death by being forced to watch a suspected giddy-up, tortured to death, as a ghastly foreshadowing of what would happen to him were he to switch sides in this civil war. Let's assume hypothetically that you're correct on the past torture. I mean, it does certainly seem very compelling in terms of what had happened based on what the evidence shows. But if we get past that to the future persecution, how do you handle that? It seems that we have, I mean, we have a board that looked at it, gave credibility and rejected the ALJ's determination on credibility, and then said, look, looking at all the evidence, the DOS and the various reports, you can interpret them different ways. And in the briefs, each side kind of interprets them a different way. But it does certainly suggest in the DOS and the ALJ, there certainly are violations, no question about that, as you've categorized in your brief. But a lot of that is not directed in terms of deserters and that type of thing. The focus was on labor situations and other situations that are not related to your client's position. So how are we to say that the board was wrong in its evaluation of those reports and how it assessed them? It appears in the board's decision that they did not consider all of the evidence of all of the reports, and furthermore, they rejected them properly. That's what I'm asking. How do we know? I mean, they gave a rather detailed report. When you say they didn't consider it, it was argued the reports were before the board, and you're simply saying they ignored the reports? Or it seems to me what you're saying is you interpret them differently and they are not the burden on appeal. Right. What we see is that there's a pattern of continued culture of impunity for military members and a continued power for this military which committed genocide, which has not been acknowledged by the board. What we are saying is that all of this evidence is clearly consistent with increased danger for deserters and their families, and that it was legal error for the board to require corroboration in a State Department report of the expert witness's testimony. Well, if we look at the Mingua report of 2001, it shows while human rights violations continue, half the abuses relate to labor disputes, a quarter to the fair judicial system to prosecute criminals. The 2001-2002 report, again, labor disputes, mistreatment of common criminals, accidental discharge of police weapons. It appears it's subsequent to the treaty, while things certainly are not good, and I certainly agree with you there, at least from what we see. Issues involving hangings of a municipal or other government officials. It seems like a lot of what's going on is not directed at clients or at people in your client's position. So certainly you can read it a different way, but wasn't it the job of the board and the LJ to take this in, make a determination, and don't we defer to the expertise of the board? Unfortunately, the board's decision doesn't seem to be supported by substantial evidence on the record as a whole. The lawlessness and lynchings that we see are actually just symptoms of a complete breakdown of the rule of law in Guatemala, which provides people who are involved with the military to take advantage of impunity, and the expert witness's testimony would fill in the gaps of the more generalized report. The 2001 U.N. report shows an increase in extrajudicial killings and pressure of witnesses against the military not to testify. We are also concerned with where is the evidence here that deserters have actually returned to Guatemala? Is it not reasonable that they are too fearful to even return at this point, and that's why we're not seeing a huge amount of violations against them? Is there evidence given to the board that there are deserters who are not going back? Yes, that evidence is shown in the record on 1453 and 1461 from a former U.N. investigator in a case in Canada. But I'm saying there was not evidence, figures of a broad deserters, former deserters from the military prior to the treaty who are now afraid to go back, was there? Well, many, many people did seek asylum in other countries, and we haven't seen them returning. Right. I need to turn to the case of the wife, whose case was so full of errors that no deference is due to either the judge or the board. The judge made several factual errors. They did not, he did not see any evidence of similarly situated people, but evidence of that was presented. He applied the wrong standard to her case, which goes against the intent of refugee law, which is to protect people seeking asylum. When you say the wrong one, are you referring to the use of the word compelled? Yes. Yeah. Granted, that word was used, but wasn't the analysis didn't really rely on compelled? I mean, that may have just been a misstatement there, but it doesn't appear that the analysis was applied based on that standard. When he's stating the law, it appears he has taken some accurate language from the judge's bench book, but when he's applying the law to the decision and the facts in this case, he is using the wrong standard. And there's a reason why we need to only show 10% chance. We must only show that the fear is based in reality. Furthermore, the board rejected three claims she did not even make, ensuring that they did not accurately review the evidence. And the facts of her case, especially with recent killing, compelled this court to find that her fear was based on at least a 10% chance. I'd like to reserve the rest for rebuttal. Thank you. Thanks. We'll hear from the government. Good morning, Your Honors. May it please the Court, my name is Tom Holtzman. I represent the Attorney General in this matter. Yuman and Yokari seek relief from removal to Guatemala. The IJ and BIA found them ineligible because they did not have a well-founded fear of persecution and nothing in this record compels reversal of those findings. Mr. Holtzman, at the onset, I just want to say that we do appreciate the fact that the BIA had a more comprehensive decision in this case than we often see. So it is quite helpful to us, as you know from our discussions on policy, to have a full and fair record. And I'm sure you at OIL appreciate that, to have one to defend, too. Yes. I must admit, this I think is good news for all of us. And I think part of the reason why it was so comprehensive is because these people did such a good, thorough job of preparing the case. So from that perspective, I think we've all benefited from the good job that these students have done. So that being said, we turn to the first. Back to business. Back to business. There are a lot of issues that have been presented. The key one, it seems to me, is well-founded fear. The BIA found that even shifting the burden of proof to the government, even assuming that these people suffered past persecution, changed country conditions, doomed the application for relief. And certainly there's nothing in the record that compels reversal of that. The BIA relied primarily on the country condition reports. What these reports make clear is that conditions in Guatemala, while much better than during the time of the Civil War, are still not great in terms of human rights. But the Lopezes have failed to show how they're among the people that are at risk. The reports are clear that the criminals, social undesirables, activists... Do you perceive any difference in risk as between the two in terms of the potential for future... I think their expert testified that the husband, the deserter, was at more risk than the wife. But our position is there's really very little, if any, risk. Not only the country condition report, but all of the reports, Mingua, Amnesty International, OAS, Human Rights Watch, they're all in this record and they all agree on who the victims are. The lynchings, the lawlessness, it's all the criminals, the social undesirables, all of these sorts of people, petty thieves, drunken disorderly conduct. And the First Circuit in the Palma Mazariego's case has affirmed that the 2002 report, which is of course later than the ones in this record, supports the same conclusion. There are human rights abuses, but not directed at particular groups. Also emphasized their expert, Dr. Green, her testimony does not compel reversal either because of a missing piece of evidence. And that missing piece is testimony in the villages with which she is familiar, deserters and suspected guerrillas are victims of persecution. She's familiar with this or that village and two people who had been suspected guerrillas during the Civil War disappeared or were murdered or had their houses burned in another isn't there to compel reversal of the board's findings based on the country reports and the various reports from other organizations which are in the record. If the panel has no questions, no further questions, we would just ask that the Let's forget for a moment the potential for future and focus on the presumption. Do you agree with the determination that at least as to Yuma, there was no past sufficient past torture or et cetera? I mean, that seemed pretty extreme. Well, I think that's a hard question. A lot of what went on appears to have been the kind of hazing that the military probably rejects off. I mean, what in that sense, what happened rather extreme hazing, which I understand from the director of the office at oil, who was a Marine officer, that some of that kind of thing is not unusual in our military, that kind of hazing. But leaving that aside for the moment, You may go further than you need to go. Nobody makes anybody watch a killing in our military, I hope. Do they? I've never been in the military, but I think that would testify. I think what you seem to be leaving that possibility open. What's important here, I think, is to compare what happened to Yuman with what happened to the one who was actually a suspected guerrilla, who was tortured and then slowly is fixed. Well, really, if you look at all the other cases, you'd have to say that almost 90 percent of the cases, we would hold that that was past persecution. Well, the court may well be correct in that. We would contend that it isn't, but it's unnecessary for you to reach that issue. Yes, I know. What I would like you to address is the question of the one year departure bar and whether or not the board adequately discussed that. What do you think the law is with respect to the board's duty to address issues raised? Well, if we look at what the board actually did, the court will indulge me for a moment. What the board said was the respondent waited two years after discovering the fraud before he properly filed an application at DHS. Given this delay, we conclude that the respondent did not hasten to file the application within a reasonable period. That's at pages two and three of the record. They certainly did discuss the extraordinary circumstances issue. There's no question about it. This isn't like Sagaidak where they completely failed to address it at all. They did address it. I mean, perhaps they could have put the words, notwithstanding respondent's PTSD, we find. But because these people did such a good job, they had all of that before them. And indeed, for them to have discussed every single thing that was raised, the decision would have been this long instead of what we have. Well, they do have the obligation to address the substance of the motion. And I guess the question is, is there any other obligation to address every issue? You would say no, as long as the record fairly indicates that they are aware of and they address the substance. Their position is we have this major exception that the board didn't address. Are you contending it's inherent in the decision? That's correct. Since they did say two years is too long, and they had five pages' worth of briefing in front of them about the PTSD, we have to assume that they looked at that and they said, well, two years is still too long. It's hard to say they addressed it directly. Pardon? You can't say they addressed it directly. I guess we just have to draw the significance for it. As opposed to other cases, they did address the issue. They addressed a number of issues directly and clearly. And this one, I think, is subsumed under they may not have said anything about PTSD, but they certainly said something about extraordinary circumstances and reasonable delay. You have to assume, I think, that they understood his argument that he had PTSD and that was what was responsible, and they said two years is still too long. Any further questions? I think we have your argument, Ann. Thank you. We'll give you some time for the bottom. By the way, I could be wrong, but I think you've all just been offered jobs. You may not want to go that route. I've got a few points I'd like to address here. First of all, what did the husband know? He knew that his lawyer disappeared, but he didn't know that his application wasn't filed until the FOIA request was made. Yeah, but he could have known. Couldn't he own this record? Nothing's happening. What's going on? He didn't inquire, did he? He did not inquire, but the reasonableness of that is affected by his mental state. But what about the argument that's inherent in the determination that it was, having had the briefing on the mental state, having had the briefing on how long, having had the briefing on the lawyer's failure to complete the assignment, the board concluded, you know, based upon all this, two years is too long. And I guess we come back, and maybe we'll just keep going around as to how much they had to put into the decision to deal with that. Yeah. We don't know if the BIA considered evidence of his mental state, but since they did not mention it, the only reasonable conclusion is that they didn't actually consider that. In Dr. Green's affidavit, she actually says that anyone opposing the military is seen as an enemy of the military in rural areas in Guatemala, where she has spent time. And it's the burden on the government to show that returning deserters are safe once past persecution is established. The evidence shows that military power continues from the genocide and that it has moved into policing. In the wife's case, in 2001, the State Department report shows that the military's enemies are targeted with impunity, and the recent murder in her town adds to that. We'd like to ask that this court finds past persecution and grants withholding for the husband and remands for an independent consideration of the CAT claim, or the Convention Against Torture Claim in Humanitarian Asylum, and we ask that you find a well-founded fear for the wife and remand her case for discretionary determinations. Thank you very much. Thank you, counsel. It's our privilege to have them participate. The briefing has been excellent. Your representation of your clients has been superb. And we only wish that other similarly situated immigrants had the benefit of your expertise. So we want to thank you for that. And I hope you noticed that we didn't compromise on the questioning. I think we view it as you did us a favor by allowing you to argue. Great job. The case just heard will be submitted. The final case of Bakery v. NLRB is submitted, and we'll proceed to the final case on the oral argument calendar, which is Pallone v. Commissioner.
judges: Farris, Thomas, Schiavelli